## HODGSON *v.* HART *et al.*

1. The general rule is that "the principal is bound by notice to his agent, for the same reason and to the same extent that he is bound by the act of his agent. . . But when the agent departs from the scope of the agency, and begins to act for himself and not for the principal; when his private interest is allowed to outweigh his duty as a representative; when to communicate the information would prevent the accomplishment of his fraudulent scheme, he becomes an opposite party, not an agent. The reason for the rule then ceases."

2. Under the evidence and the necessary deductions therefrom, the verdict in favor of the plaintiff in fi. fa. was demanded, and the court did not err in directing the verdict excepted to.

No. 6025. FEBRUARY 16, 1928. REHEARING DENIED FEBRUARY 29, 1928.

Claim. Before Judge Fortson. Clarke superior court. March 29, 1927.

Mrs. John C. Hart obtained, in the city court of Athens, a judgment against C. N. Hodgson for $12,000, with interest and attorney's fees, on November 17, 1925. This execution was levied upon a tract of land as the property of C. N. Hodgson. The

Agency, 2 C. J. p. 869, n. 11.
Trial, 38 Cyc. p. 1565, n. 84.

entry of the levying officer stated that the property was in possession of defendant in fi. fa. A claim to the property levied on was filed by Mrs. Irene P. Hodgson, wife of the defendant in fi. fa. It appears that on February 1, 1919, C. N. Hodgson executed two notes payable to the order of Guaranty Investment & Loan Co., one for $5000, and another for $7000, both maturing, one year from that date. (The name of the Guaranty Investment & Loan Co. was afterwards changed to Guaranty Investment Corporation, and for convenience is hereinafter referred to as the Guaranty Company.) Simultaneously with the execution of these notes the defendant in fi. fa. executed to the Guaranty Company a deed conveying the land in dispute, which deed specified that it was intended as a contract to secure the payment of a debt, describing the two notes above mentioned as the debt which it was given to secure. The claimant relied upon a title predicated on the fact that on September 14, 1912, Asbury Hodgson, the father of the defendant in fi. fa., having previously made to the latter a deed to the land in dispute, for some reason satisfactory to himself, desiring to provide a home for his daughter-in-law and her children, conveyed to the claimant the equivalent of $6250, and in turn had the claimant transfer this $6250 worth of property and cash to C. N. Hodgson, who then executed and delivered to his wife, the claimant, a deed to the property now in dispute.

On the trial it appeared that on June 15, 1918, the claimant executed an instrument purporting to disclaim title to the property in dispute, and containing in substance a statement that C. N. Hodgson, on September 14, 1912, executed a deed to that property, in which his wife was named as the grantee, and in which the consideration was stated as natural love and affection and the sum of $6250 in cash and its equivalent; that this deed was not delivered on that date, and had never been delivered, and in fact no consideration passed, nor had any consideration passed between the parties named, no title was passed by said deed, but, if any equity did pass, the said Irene Powell Hodgson "is to-day" executing this particular deed for the purpose of conveying said equity back to C. N. Hodgson, the grantor; and that for and in consideration of the love and affection that she has for her husband she does this day grant, bargain, sell, alien,

and convey to him and his heirs and assigns the property described therein (the property now in dispute). This instrument contained a general warranty of title, and in addition the following clause: "This particular deed is entered into for the express purpose of reconveying to C. N. Hodgson any title which might have passed by the undelivered deed hereinbefore referred to, which deed was in fact based upon no consideration; and this particular deed from Irene Powell Hodgson to her husband, C. N. Hodgson, is made without consideration, voluntarily and of her own free will, for the purpose herein stated." Again, on February 1, 1919, the claimant made to the defendant in fi. fa. a deed conveying to him the same land to which claim was filed, containing the following recital: "For and in consideration of the love and affection that she has for her said husband, C. N. Hodgson, the said Irene Powell Hodgson does this day grant, bargain, sell, alien, convey, and confirm, and by these presents does grant, bargain, sell, alien, and convey and confirm unto the said C. N. Hodgson, his heirs and assigns, all the following described property: " etc. The date of this deed is the same as that of the deed from C. N. Hodgson to the Guaranty Company to secure the notes upon which the judgment of the plaintiff in fi. fa. was predicated.

The court directed a verdict finding the property subject to the fi. fa. The claimant excepted to this judgment, and to the refusal of a new trial.

*A. C. Wheeler, Dorsey Davis,* and *F. C. Shackelford,* for plaintiff in error.

*W. K. Meadow* and *Erwin, Erwin & Nix,* contra.

BECK, P. J. (After stating the foregoing facts.) The court did not err in directing the jury to return a verdict finding the property subject. The verdict was demanded by the evidence. Mrs. Hodgson, the claimant, relied upon a title predicated on the fact that on September 14, 1912, Asbury Hodgson, having previously made a deed to the land in dispute to C. N. Hodgson, defendant in fi. fa., for some reason satisfactory to himself conveyed to the claimant, Mrs. Hodgson, property of the value of $6250, consisting of stocks, etc., and in turn had the claimant transfer this property to C. N. Hodgson, who then made and executed and delivered to his wife a deed to the property levied

upon. But Mrs. Hodgson in 1918 executed an instrument disclaiming title to the property and stating in substance that the deed from her husband to herself was not delivered and had never been delivered, that there was no consideration for it, and that no title passed by it. This instrument contained the following clause: "This particular deed is entered into for the express purpose of reconveying to C. N. Hodgson any title which might have passed by the undelivered deed hereinbefore referred to. which deed was in fact based upon no consideration, and this particular deed from Irene Powell Hodgson to her husband, C. N. Hodgson, is made without consideration, voluntarily and of her own free will, for the purpose herein stated." And on February 1, 1919, the claimant executed to the defendant in fi. fa. a deed conveying the same land, and containing the following recital: "That for and in consideration of the love and affection that she has for her said husband, C. N. Hodgson, the said Irene Powell Hodgson does this day grant, bargain, sell alien, convey, and confirm, and by these presents does grant, bargain, sell, alien, and convey and confirm unto the said C. N. Hodgson, his heirs and assigns, all the following described property, to wit:" the property in dispute. Thus it stands that, without anything of record to show the contrary, the title to the land was in C. N. Hodgson. It was in him on September 14, 1912, and he was living upon the property with his wife, the claimant. She testified that she had been living upon the property many years prior to 1912, and "there was no difference in the way I lived on it before the execution of the deed and afterwards." And she was living there with her husband.

On February 1, 1919, C. N. Hodgson, having complete paper title to this property and living there with his family, executed to the Guaranty Company a deed to secure the payment of two notes, aggregating $12,000. These notes were payable to the Guaranty Company, but that company did not advance the money for which they were given. All of this money was furnished by Mrs. Hart, plaintiff in fi. fa. The loan was arranged between Hodgson and John J. Wilkins, the latter acting as agent for Mrs. Hart in the transaction. After indorsements the notes were passed to Mrs. Hart or to Wilkins, who held them for her. The Guaranty Company was afterwards placed in the hands of a re-

ceiver, and the receiver under order of the court conveyed to Mrs. Hart the land described in the security deed, vesting in her the legal title to the security for the payment of the notes.

Counsel for claimant contend that the property in dispute is not subject to the fi. fa., for the reasons: that Asbury Hodgson on September 14, 1912, furnished the equivalent of $6250 to the claimant, which was in turn by her made over to her husband as a consideration for the deed from him to her of that date, thereby vesting her with the fee-simple title to the property; that she went into possession and assumed control of the property, and this was notice to the world of her title; that Wilkins, Mrs. Hart's agent, knew of the existence of the deed placing the title in the claimant; that he procured the preparation of the instruments dated June 15, 1918, and February 1, 1919, from Mrs. Hodgson to her husband; that these instruments were made in pursuance of a scheme, into which Wilkins entered, to enable the husband of claimant to use the property for the purpose of securing or paying his debt; and that Mrs. Hart is bound by notice to her agent, Wilkins, and she can not ratify the acts of Wilkins in part, by holding the security, and be exempt from the effects of any notice that Wilkins had as to the title. Counsel for plaintiff in error rely upon that part of section 3007 of the Civil Code which declares that "while the wife may contract, she can not bind her separate estate by any contract of suretyship, nor by any assumption of the debts of her husband, and any sale of her separate estate, made to a creditor of her husband in extinguishment of his debts, shall be absolutely void." They rely also upon the following decision by this court: "Sale of the wife's separate estate to the husband's creditor to pay his debt is void, and the purchaser acquires no title. If the purchaser be not the actual creditor but his agent, taking the title in his own name, while the facts show that the real purpose was to collect his principal's, the creditor's, debt, the sale is equally void, and the deed will be set aside. Equity abhors all deceit, and will allow nothing to be done indirectly which can not be openly and directly done." *Kent* v. *Plumb,* 57 *Ga.* 207. Other cases are cited in their brief, restating these principles.

But we do not think that under the circumstances of this case notice to Wilkins of the claim of title by Mrs. Hodgson is to be

imputed to Mrs. Hart, who loaned the money on the faith of these securities. It is true that Mrs. Hodgson was living on the land levied upon; but she was living there with her husband, and had been living there for many years with him while the title was unquestionably in him; and after the transaction to which we have referred, the execution of the deed to her by her husband, which was never recorded, she and her husband continued to live on the place as they had before. It is true that she ran a dairy upon the place, but this did not show any change in the title. Her husband continued to return the property for taxation, to insure the dwelling on it in his own name; and he collected from the insurance company for some small damage done to the property by fire. If Wilkins had notice that the title to the property was in Mrs. Hodgson, this notice was not imputable to Mrs. Hart, although Wilkins was her agent in making the loan. We think the facts bring the case within the principle of the ruling in *Pursley* v. *Stahley,* 122 *Ga.* 362 (50 S. E. 139), where this court said: "The principal is bound by notice to his agent, for the same reason and to the same extent that he is bound by the act of his agent. In both cases it must be limited to matters within the scope of the agency. Notice as to such matters binds the principal, according to some authorities, on the theory that the agent and the principal are to be regarded as one; according to others, on the theory that the agent may and should act for his principal on such information; and according to others, because there is a presumption that such notice will be communicated. See *Morris* v. *Georgia Loan Co.,* 109 *Ga.* 24 [34 S. E. 378, 46 L. R. A. 506]; Civil Code, §§ 3027, 3028. But when the agent departs from the scope of the agency, and begins to act for himself and not for the principal; when his private interest is allowed to outweigh his duty as a representative; when to communicate the information would prevent the accomplishment of his fraudulent scheme, he becomes an opposite party, not an agent. The reason for the rule then ceases. Where, therefore, the agent who is an intermediary is guilty of independent fraud for his own benefit, the law does not impute to the principal notice of such fraud. Instead of being communicated, it would be purposely and fraudulently concealed." And the evidence in this case conclusively shows that Mrs. Hart's

agent, Wilkins, to paraphrase the language of the decision from which the above extract is taken, departed from the scope of his agency, and both began and continued to act for himself and not for his principal; that he allowed his private interest to outweigh his duty as a representative. Having notice of the defects in the security upon which his principal relied in furnishing the $12,000, if he actually had that notice, he must have known that she would not have loaned the money upon such security, and he also knew that to communicate this information would prevent the accomplishment of his fraudulent scheme. He was the president and large stockholder in two banks that were to receive the money and be benefited thereby; for he had 400 shares in one, of the par value of $100 per share, and 100 shares in the other. Under these circumstances, as held in *Pursley* v. *Stahley,* supra, "he became an opposite party, and not an agent." And Mrs. Hart had no notice of the vital facts that affected her security. Even if it could be held that the firm of lawyers who prepared the deed had notice, they did not stand in such relation to her as to raise the presumption that facts in their knowledge were communicated to her.

The questions raised by this record are not elaborately discussed, and need not be. But what is said above disposes of the controlling question in this case.

*Judgment affirmed. All the Justices concur, except Russell, C. J., and Hines, J., dissenting.*

### ON MOTION FOR REHEARING.

In the motion for a rehearing attention is called to the fact that in one part of the decision this court said: "And after the transaction to which we have referred, the execution of the deed to her [Mrs. Hodgson] by her husband, which was never delivered and never recorded, she and her husband continued to live on the place as they had before;" and it is pointed out that there was testimony showing that the deed referred to was delivered. The statement in the opinion that it was not delivered was an inadvertence. In the statement of facts appearing in connection with the opinion it will be seen that the fact that it was delivered is duly set forth. The opinion will be corrected so as to eliminate the statement that the instrument was "never delivered." This, however, makes no essential difference in view

of other evidence in the case; for, as appears in the statement of facts, on June 15, 1918, the claimant, Mrs. Hodgson, executed an instrument purporting to disclaim title to the property in dispute, and containing in substance a statement that C. N. Hodgson, on September 14, 1912, executed a deed to that property, in which she was named as the grantee, and in which the consideration was stated as natural love and affection and the sum of $6250 in cash and its equivalent; that this deed was not delivered on that date, and had never been delivered, and in fact no consideration passed, nor had any consideration passed between the parties named, no title was passed by said deed, but, if any equity did pass, the said Irene Hodgson "is to-day executing this particular deed for the purpose of conveying said equity back to C. N. Hodgson, the grantor, and that for and in consideration of the love and affection that she has for her husband she does this day grant, bargain, sell, alien, and convey to him," etc., the property described therein, now in dispute.

Other facts in the record to which counsel in their motion for rehearing call attention were not overlooked, but were duly considered; and the motion for rehearing is denied.