### 25642. AMERICAN SURETY COMPANY *v.* PEOPLES BANK.

DECIDED NOVEMBER 17, 1936. REHEARING DENIED DECEMBER 17, 1936.

*Martin, Martin & Snow,* for plaintiff in error.

*Edwin A. Cohen, C. L. Cowart,* contra.

MACINTYRE, J.   The petition alleges that Easterling was cashier of the Peoples Bank and was later appointed administrator of the estate of Mrs. Waters; that the American Surety Company en-

tered into a bond to indemnify the bank for such pecuniary loss as the bank "shall have sustained of money or other personal property (including that for which the employer is responsible), by any act or acts of larceny or embezzlement on the part of the employee, directly or through the connivance with others while in any position or at any location in the employ of the employer." And it likewise alleges that there is a provision in the bond that the surety shall not be liable thereunder for any default, the proceeds of which shall have been applied to the payment to the employer of a pre-existing debt. And that the bond also provides that loss be discovered within fifteen months following termination of employment, that notice of the same be given the company within ten days after the discovery of such loss, and that suit be filed within twelve months thereafter. The petition further alleges that during the term of said bond, and while the same was still in full force and effect, Easterling, while an employee of the bank, embezzled the funds of the bank in the sum of $2285.83 and appropriated the same to his own use, to the loss and damage of the said bank in the sum aforesaid. That the said funds "were taken by Easterling from his account in the plaintiff's bank as administrator of the estate of Mrs. Waters and placed to his individual account and then taken by him from said individual account, and that the plaintiff derived no benefit therefrom." The petition still further alleges that on March 27, 1928, the heirs of Mrs. Waters brought their petition against Easterling, as administrator of the estate of Mrs. Waters, and against the sureties on his administrator's bond, alleging, among other things, that Easterling and his sureties were indebted to the heirs in the sum of $19,972, and claiming that Easterling had embezzled the funds of said estate. That in August, 1928, the heirs of Mrs. Waters filed a petition, and, while claiming liability on the part of said administrator, they also claimed liability to them on the part of the bank, and prayed that the bank be made party defendant in said suit, and that promptly thereafter, on August 27, 1928, the bank notified the surety company of said facts, and on September 5, 1928, the surety company acknowledged receipt of said notice and asked that the petitioner vigorously contest any action to make the bank a party to said original suit, and desired to be informed of the amount involved therein. That on September 8, 1928, peti-

tioner notified the surety company that the amount involved had not been definitely determined, but in all probability would be around $5000, receipt of which notice was acknowledged by the surety company on September 19, 1928; and said company then asked to be kept advised as to further developments. That on September 11, 1928, the defendant company informed the bank that it was correct in resisting being made a party to said action, and stated that the bond of Easterling, as administrator, involved in said suit, would have to be exhausted before the heirs of the Waters estate could call upon the bond of said defendant surety company which is now being sued on. That the surety company further stated that the bank was exactly right in resisting said effort, because the principal, Easterling, named in the surety bond, although, as it understood it, carrying the account of the administrator in the plaintiff's bank, represented nothing more than any other customer so far as the bank was concerned. That the surety company further thanked the plaintiff for bringing the matter to its attention, and asked that it be kept advised promptly of all developments so that it could better know where it stood. That on April 7, 1931, the surety company requested the bank to advise it where the case pending would come on for trial, and requested that a copy "summons and complaint" be sent to it. On April 11, 1931, petitioner sent the requested information to said company, and for its complete information sent to it an exact copy of the suit. That at the surety company's instance and request, the bank filed its defense in said case and contested as vigorously as it could the right of said heirs to make petitioner a party to said suit. That the result of petitioner's efforts to prevent the heirs of Mrs. Waters from obtaining any judgment against the bank on account of the embezzlement of the funds by Easterling, for whom the security company had indemnified the bank against any loss on his part as an employee, is shown in the following decisions: *Burkhalter* v. *Peoples Bank,* 169 *Ga.* 645 (151 S. E. 389); *Easterling* v. *Burkhalter,* 174 *Ga.* 97 (162 S. E. 137); *Burkhalter* v. *Peoples Bank,* 175 *Ga.* 744 (165 S. E. 749); *Peoples Bank* v. *Burkhalter,* 179 *Ga.* 863 (177 S. E. 708). The case last above stated affirmed a judgment in favor of the heirs against the bank for $2248.23 principal and $400 as attorney's fees. That an execution for said sum was issued in favor of the heirs and against

the bank in the trial court. That petitioner gave notice to the surety company of the rendition of said decision or final judgment, and notified it that it intended to enter suit upon the surety bond involved in this case unless satisfactory adjustment was made, and that on July 8, 1935, the surety company refused payment. That the bank relied on the acts and conduct of the surety company in causing and inducing the plaintiff bank to contest any and all liabilities in the premises, and that the bank was thereby induced not to file any suit against the surety company on said bond, but to await the final determination in said litigation of the question whether the bank would be held liable to the heirs for the acts of embezzlement on the part of the cashier, the principal named therein, and if so, in what amount; the said surety company all the while urging and insisting that the said litigation be contested by the bank, it being to the interest and for the benefit of the said surety company that this be done.

The bank alleges further that the surety company waived the stipulations in the bond that loss be discovered within fifteen months following the termination of employment, that notice of the same be given the company within ten days after the discovery of said loss, and that suit be filed within twelve months thereafter; and that the surety company was therefore estopped from urging these provisions in a suit brought on the bond to recover for a loss thereunder. The surety company demurred to the petition of the bank as amended, and for grounds of demurrer said that it is vitally defective in that the money which was being stolen or misused was not the bank's money, hence there can be no liability under the terms of the bond. And that Easterling may have been guilty of larceny and embezzlement, but from start to finish in plaintiff's petition, it appears that it was the estate which was defrauded and not the bank. The surety company further demurs to the bank's petition and says that the bank absolutely failed to comply with the provision of the bond that notice be given and claim filed within a specified time. The court overruled the surety company's demurrer and it excepted.

■ "Money deposited in banks is not left in trust of the officers or agents, but is left as a trust with the bank, and becomes the property of the bank, with the only obligation, ordinarily, that its equivalent in like kind be returned to the depositor on demand.

There is no agreement, expressed or implied, that the officer or agent of the bank is to personally account to each depositor. These officers and agents account to the bank, and it to the customer." Ballew v. State, 11 Okla. Cr. 598, 601 (149 Pac. 1070). "When money is placed in a bank on general deposit, the title to the money immediately passes to the bank, and the relation of debtor and creditor is created between the bank and the depositor. The moment the deposit is made, the credit of the banker is substituted for the money." McGregor v. Battle, 128 Ga. 577 (58 S. E. 28, 13 L. R. A. (N. S.) 185). There is no trust relationship between a bank and a general depositor unless something aliunde appears to the contrary. Cato v. Mixon, 165 Ga. 245, 249 (140 S. E. 376). "As a general rule, a bank may assume that a trustee will apply money deposited by him to its proper purposes under the trust, and is not accountable for any misappropriation of trust funds in which it does not participate; but a bank can not, without incurring liability to the true owner, knowingly appropriate to the satisfaction of a debt due to it by another trust funds deposited with it by him after the creation of such debt." Burkhalter v. Peoples Bank, 175 Ga. 744 (supra). In the present case, while Easterling might be described as a double agent, one principal being the bank and the other principal being the estate of Mrs. Waters, the position assumed by him as agent of the bank entirely conflicts with the idea that he represents the interest of the estate. 3 C. J. S. 203 (54). And if the bank receives a benefit as a result of the fraudulent conduct of Easterling, it can not keep the benefit and escape responsibility by which it has been acquired. Restatement of the Law, Agency, 629 (c); Peoples Bank v. Burkhalter, 179 Ga. 863 (supra). A principal can not retain benefits and advantages secured by him through the act of his agent, and as a result of that same agent's perfidy to the other principal. Napier v. Adams, 166 Ga. 403, 411 (143 S. E. 566). In Burkhalter v. Peoples Bank, 175 Ga. 744 (supra), it was held that the heirs of the estate of Mrs. Waters could recover against the Peoples Bank. In other words, the bank was accountable to the heirs. Thus, the bank could not escape liability in the premises for the reason that the transaction was one in the regular course of banking business and the act of the dual agent, Easterling, was in the interest of the bank and not a transaction by Easterling as administrator in the interest of the Waters

estate, or in the regular course of business of the estate. If the funds were deposited in the bank and the cashier wrongfully and fraudulently converted the same to his own use by transferring the funds from another depositor's account to his individual account, both accounts being in the bank of which he was the cashier, would it not be proper to allege, in case of an indictment, that the funds embezzled were the property of the bank? We think so. *Waters* v. *State,* 15 *Ga. App.* 342 (83 S. E. 200); *McGregor* v. *Battle,* supra. And if this statement is correct, the allegation in the petition in this civil suit, "that during the term of said bond and while the same was in full force and effect the said Easterling while in the employ of the bank embezzled the funds of the bank in the sum of $2248.23 and appropriated the same to his own use to the loss and damage of the bank in the sum aforesaid," and when amended by adding "that the funds were taken by the said Easterling from his account in the plaintiff bank as administrator of the estate of Mrs. J. B. Waters and placed to his individual account and then taken by him from said individual account, and that the plaintiff derived no benefit therefrom," is, in effect, an allegation that Easterling embezzled the funds from the bank. That part of the petition which is alleged by amendment "that the funds were taken by the said R. D. Easterling from his account in the plaintiff bank as administrator of the estate of Mrs. J. B. Waters and placed to his individual account, and then taken by him from said individual account, and that plaintiff derived no benefit therefrom," are allegations, it seems to us, (1) for the purpose of identifying the particular account in the bank from which Easterling took the funds, that is, that he took the funds from an account in the bank, and that this account was the account of Easterling, the administrator of the estate of Mrs. Waters. It was not an allegation that, acting only as administrator of said estate, he took the funds from this administrator's account. It identified the particular funds of the bank alleged to be embezzled. (2) For the purpose of identifying the account in the bank in which he placed them, to wit, his individual account. (3) This allegation that the bank derived no benefit from the transaction was made to take the case out of the rule that if the principal received a benefit as the result of the conduct of an agent, he can not keep the benefit and escape responsibility for the means by which it has been acquired. Restate-

ment of the Law, Agency, 629; *Hodgson* v. *Hart,* 165 *Ga.* 882 (142 S. E. 267). When Easterling took the funds from the account of the estate and put them in his overdrawn individual account in the bank, of which he was cashier, and in which both deposits were made, he was acting, as between the bank and the estate, in the interest of the bank. *Peoples Bank* v. *Burkhalter,* 179 *Ga.* 864 (supra). And then, when he took the funds from his individual account, he thereby kept the bank from deriving any benefit from his former act. As to the latter act, as between himself and the bank, the bank was unrepresented. An embezzler does not represent the bank while he is in the act of stealing from it, although there is no one else to supervise the transfer of the property. Atlantic Mills *v.* Indian Orchard Mills, 147 Mass. 268, 279 (17 N. E. 496, 9 Am. St. R. 698); *Hodgson* v. *Hart,* supra; *Taylor* v. *Felder,* 3 *Ga. App.* 287, 291 (59 S. E. 844).

If the transfer of the estate's property to the bank was intended as a payment on account of Easterling's overdraft in the bank, the plaintiff bank would not be entitled to hold the same on the ground that it would be chargeable with Easterling's knowledge of the source from which the funds came. The transfer of the funds can not be considered as a payment by Easterling to the bank because it was not so understood or intended by either party. There was no accounting between them. Nobody but Easterling could possibly have intended that the transaction should amount to a payment, and his intention, if entertained, was ineffectual because of his fraud. When Easterling undertook in this manner to make a payment by secretly transferring the property of the estate to his overdrawn account in the bank, the act can not take effect as a payment because it was not received as such by any person acting on behalf of the bank. There was not even a semblance of an accounting. And, under these circumstances, if the bank should adopt the intention to make it a payment, it must also adopt the fraud. It can not adopt so much of Easterling's act as was beneficial and reject the rest. Atlantic Mills *v.* Indian Orchard Mills, supra. Therefore section 4 of the bond which reads as follows: "That the surety shall not be liable hereunder for any default, the proceeds of which shall have been applied to the payment to the employer of a pre-existing debt," is not applicable.

■ Another ground of the demurrer contends that the bank has

failed to comply with the terms and provisions of the bond which required notice to be given to the surety company within ten days and that suit be filed within twelve months. (*a*) Where the surety company, as in this case, had notice of the alleged claim and did not cóntest its sufficiency, it can not now claim that the notice was insufficient. *Great American Co-operative Fire Association* v. *Jenkins,* 11 *Ga. App.* 784 (2) (76 S. E. 159) ; *Peoples Loan & Savings Co.* v. *Fidelity & Casualty Co.,* 39 *Ga. App.* 337 (5) (147 S. E. 171) ; *Holder* v. *Farmers Exchange Bank,* 28 *Ga. App.* 21, 23 (110 S. E. 762). (*b*) In Irwin *v.* Sovereign Camp, 15 N. M. 365 (110 Pac. 550), it was said : "Where the defendant admits liability and advises and requests the plaintiff to bring suit in order to dispose of the conflicting claims of a third party, and for no other purpose, he will not, after plaintiff has begun suit and incurred costs, be permitted to deny liability." In *Stanley* v. *Sterling,* 12 *Ga. App.* 475 (77 S. E. 664), it was said: "Where an insurer, by negotiating for a settlement . . has led the holder to believe that he will be paid without suit, the latter can not take advantage of a provision in the policy requiring action thereon to be brought within a stated time." Such stipulations in the instant case, in reference to the time in which suit must be brought on the fidelity bond, are for the benefit of the company, and may be waived by it. We think the allegations of the petition in the instant case were sufficient to carry the case to the jury for them to say whether the surety company led the bank to believe that the claim under the bond sued on would be paid by the surety company without suit, if the bank would by legal proceedings force the heirs of Mrs. Waters to exhaust the bond of Easterling as administrator of the estate before calling on the bond of the surety company which protected the bank, and thus determine the amount due by the surety company on account of the embezzlement of Easterling. Or, in other words, if the allegations of the petition were proved, they would authorize a finding that the surety company waived a compliance with the terms of the bond relative to filing suit thereon, and were estopped from insisting on a strict compliance with the terms thereof. *Knights of the Ku Klux Klan* v. *Fidelity & Deposit Co.,* 47 *Ga. App.* 12 (169 S. E. 514) ; Smiley *v.* Barker, 83 Fed. 684; Cole *v.* Dial, 12 Texas, 100.

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*

ON MOTION FOR REHEARING.

MacIntyre, J. This case being here on account of the over-ruling of demurrers (on demurrers the allegations are considered as true), the language used in the opinion, "when he took the funds from his individual account, he thereby kept the bank from deriving any benefit from his former act," was used in the sense that if, as alleged in the petition, he took the funds from the individual account, he would thereby have kept the bank from deriving any benefit from his former account. Having arrived at the conclusion as between Easterling, the cashier, and the bank, that under the alleged scheme adopted by Easterling of taking the funds from the account of the estate of Mrs. Waters, of which estate he was the administrator, and placing them in his overdrawn individual account, both accounts being in the bank of which he was cashier, and then taking them from his individual account, the petition did not allege a valid payment to the bank of a pre-existing debt, we do not think that it appeared from the allegations of the petition that there was a violation of the provisions of the bond "that the surety shall not be liable hereunder for any default the proceeds of which shall have been applied to the payment to the employer of a pre-existing debt." Bearing in mind that the moment the general deposit is made, the credit of the banker is substituted for the money and that the title to the money passes to the bank, we are of the opinion that if the allegations be true "that the funds were taken by the said R. D. Easterling from his account in the plaintiff's bank as administrator of the estate of Mrs. J. B. Waters and placed in his individual account, and then taken by him from said individual account, and that the plaintiff derived no benefit therefrom," then the facts alleged would authorize a conclusion or finding that the bank sustained a pecuniary loss "by the act of larceny or embezzlement" on the part of Easterling, and under the provisions of the bond the surety company which indemnified the bank for such pecuniary loss as the bank "shall have sustained of money or of other personal property (including· that for which the employer is responsible) by any act or acts of larceny or embezzlement on the part of the employee," the bank could recover on the bond for such loss. We can not agree with the plaintiff in error that it appears from the plaintiff's petition that the estate was defrauded, and not the bank; nor do we think that it appears from the peti-

tion that the proceeding is nothing more or less than an effort to force the surety company to pay an overdraft of Easterling. If Easterling's alleged acts amounted to nothing more than overdrafts, why the necessity of taking money from another account in the bank and placing it in his individual account to conceal a shortage? The facts alleged in the petition would authorize a finding that the scheme of Easterling was that of "larceny or embezzlement" from the bank. *Rehearing denied.*