### 77385. KEENAN et al. v. HILL et al.
(378 SE2d 344)

McMURRAY, Presiding Judge.

Plaintiff Monty Steven Hill brought this personal injury action against Anthony Lee Keenan and All Day Leasing, Inc. ("All Day Leasing"). He alleged that All Day Leasing owned a 1980 Cadillac automobile which it negligently entrusted to Keenan on July 23, 1982; that, on that date, Keenan negligently operated the automobile; that, as a direct and proximate result of the negligence of All Day Leasing and Keenan, plaintiff sustained serious personal injuries and property damage; and that, therefore, Keenan and All Day Leasing were liable to plaintiff in the amount of $76,227.11. (Keenan, Inc., was also named as a party-defendant. It was alleged that All Day Leasing fraudulently conveyed real property to Keenan, Inc., on July 30, 1982 in order to hinder, delay and defraud plaintiff.)

Answers were filed by All Day Leasing, Keenan and Keenan, Inc. They denied that they were liable to plaintiff in any way.

Whether defendants were insured was questionable. Accordingly, plaintiff served his uninsured motorist carrier—Travelers Insurance Company ("Travelers")—by second original. Travelers filed defensive pleadings in its own name and denied that it was liable to plaintiff. In addition, Travelers asserted cross-claims against All Day Leasing and Keenan to recover any sums it might be required to pay plaintiff.

Prior to trial, plaintiff compromised and settled his claim against Travelers. Accordingly, Travelers was dismissed as a party to the proceedings. Thereafter, Travelers dismissed its cross-claims against All Day Leasing and Keenan.

Defendants objected to the dismissal of Travelers. They argued that, having elected to proceed in its own name, Travelers' interest could not be represented thereafter by plaintiff. The trial court disagreed. It ruled that, in light of a settlement agreement executed by plaintiff and Travelers, plaintiff could prosecute the action in his own name and for the benefit of Travelers.

On the morning of trial, before any evidence was taken, plaintiff announced that he was seeking punitive damages. The trial court permitted plaintiff to seek such damages over defendants' objection. In so doing, the trial court pointed out that a pre-trial order had not been signed and entered.

Upon the conclusion of the trial, the jury awarded plaintiff $297,949.24. Punitive damages against defendant Keenan accounted for $100,000 of the total award. (It also was determined that the conveyance of the real property from All Day Leasing to Keenan, Inc., should be set aside.) Judgment was entered accordingly. (The judgment against defendant Keenan was reduced by $17,000, however, to reflect previous payment of that amount as criminal restitution.) This

appeal follows. *Held*:

1. In their first and second enumerations of error, defendants contend the trial court erred in allowing Travelers' interest to be prosecuted in plaintiff's name. In this regard, defendants assert that the election of an uninsured motorist carrier to proceed in its own name is irreversible. Defendants cite no authority for this assertion and we find none. We see no reason, however, to require an uninsured motorist carrier to continue to proceed in its own name simply because it elected to do so initially. See generally *Johnson v. Amerson*, 179 Ga. App. 75 (345 SE2d 94). The first and second enumerations of error are without merit.

2. In their third and fourth enumerations of error, defendants assert the trial court erred in refusing to permit defendants to introduce evidence concerning uninsured motorist benefits and optional personal injury protection benefits that plaintiff received from Travelers. This assertion is without merit. *State Farm Mut. Auto. Ins. Co. v. Chastain*, 167 Ga. App. 822, 823 (307 SE2d 717); *City Council of Augusta v. Lee*, 153 Ga. App. 94 (264 SE2d 683); *Hall v. White*, 150 Ga. App. 545 (258 SE2d 256). See also *Polito v. Holland*, 258 Ga. 54 (365 SE2d 273).

3. No pre-trial order having been entered, and no evidence having been taken, it cannot be said the trial court erred in permitting plaintiff to amend the complaint in order to seek punitive damages. See *Jackson v. Paces Ferry Dodge*, 183 Ga. App. 502, 503 (1) (359 SE2d 412). Besides, defendants failed to demonstrate how they would be prejudiced by such an amendment. See OCGA § 9-11-15 (b). Defendants' fifth enumeration of error lacks merit.

4. The trial court did not err in refusing to grant defendant Keenan's motion for a directed verdict with regard to punitive damages. "The conduct of a hit-and-run driver of an automobile in failing to stop and give his name, etc., and render assistance to the person injured, when taken in connection with all the circumstances, may authorize a finding that the conduct of the driver in causing the injury constituted an entire want of care and conscious indifference to consequences, and therefore that there were such 'aggravating circumstances in the act' as would authorize a recovery by the person injured for punitive damages. . . ." *Battle v. Kilcrease*, 54 Ga. App. 808, 810 (4) (189 SE 573). Enumeration of error number 6 fails.

5. In the seventh enumeration of error, defendant All Day Leasing contends the trial court erred in failing to grant its motion for summary judgment and its motion for a directed verdict on the negligent entrustment issue. In this regard, it points out that no corporate officer of All Day Leasing (other than defendant Keenan himself) had actual knowledge of Keenan's poor driving record and that, in any event, the vehicle was leased by All Day Leasing to another corporate

entity—United Truckers Service, Inc.—on the day in question.

We cannot pass upon the propriety of All Day Leasing's motion for summary judgment. Following the entry of the verdict and judgment, the order denying the summary judgment motion became moot. *Stone Mountain Pool &c. Co. v. Imperial Pool Co.*, 170 Ga. App. 283 (2) (316 SE2d 769). We will review, of course, the denial of All Day Leasing's motion for a directed verdict.

The evidence adduced in the trial court demonstrates the following: All Day Leasing owned the Cadillac automobile driven by Keenan. An insurance policy covering the automobile was issued to Lynn Mason Keenan, Keenan's former wife. All Day Leasing leased the automobile to United Trucking Services, Inc. ("United Trucking") on September 16, 1980. The lease was in effect at the time of the collision.

The collision occurred during the early morning hours (approximately 2:00 a.m.) on July 23, 1982. At that time, Keenan was using the Cadillac automobile for his personal use.

Keenan was the vice-president of All Day Leasing; he was also an officer of United Trucking and Keenan, Inc. Keenan's mother was the president of All Day Leasing; his father was the corporation's secretary. Keenan's family members also held offices in United Trucking and Keenan, Inc. Keenan's mother, father and Keenan's former wife held the stock in All Day Leasing, United Trucking and Keenan, Inc.

Keenan used the Cadillac automobile almost daily. He used it for both business and personal purposes. Sometimes, he drove it home and parked it overnight. Other officers and employees of All Day Leasing, United Trucking and Keenan, Inc., used the automobile too. But Keenan himself used it most frequently.

The automobile was equipped with a radar detector. Keenan testified that he purchased the device as a gift for his former wife.

From May 30, 1977, until the time of the collision, Keenan was convicted of speeding four times and driving under the influence one time. Ultimately, his license was revoked and he was driving without a license when the collision occurred.

Keenan testified that he never told his parents, former wife, or any employee of All Day Leasing about his driving record. Keenan's mother testified that she was unaware of the traffic offenses committed by her son. Neither Keenan's father, nor his former wife, nor any other employee of All Day Leasing testified at the trial.

Based on the foregoing facts, we conclude that All Day Leasing did not entrust the Cadillac automobile to Keenan negligently. " 'Knowledge of the driver's incompetency is an essential element of the rule which holds an owner liable for furnishing his automobile to an incompetent driver. See *Holt v. Eastern Motor Co.*, 65 Ga. App. 502, 508 (15 SE2d 895); *Graham v. Cleveland*, 58 Ga. App. 810 (200

SE 184).' *Marques v. Ross*, 105 Ga. App. 133, 139 (123 SE2d 412); *NuGrape Bottling Co. v. Knott*, 47 Ga. App. 539 (1) (171 SE 151); and such knowledge must be actual rather than constructive. . . ." *Roebuck v. Payne*, 109 Ga. App. 525, 526 (2) (136 SE2d 399).

The evidence demonstrates that, with the exception of Keenan himself, no officer or employee of All Day Leasing had actual knowledge of Keenan's driving record. Can the actual knowledge of Keenan be imputed to All Day Leasing? We think not.

A corporation is bound by knowledge of an officer or agent when the knowledge pertains to matters within the scope of the officer's or agent's duties. But when the officer or agent departs from the scope of his duties and acts in such a way that his private interest outweighs his obligation as a corporate representative, the law will not impute his knowledge to the corporation. *Williams v. Citizens Bank of Ashburn*, 182 Ga. App. 461, 462 (356 SE2d 80).

Although Keenan had actual knowledge of his own driving record, it could not be imputed to All Day Leasing. Keenan's private interest in driving an automobile outweighed his duty as a representative of the corporation to ensure that an incompetent driver did not operate the corporation's automobile. Thus, Keenan was an "opposite party" insofar as the operation of the Cadillac automobile was concerned. See *Hodgson v. Hart*, 165 Ga. 882, 887 (142 SE 267).

Assuming, arguendo, that Keenan's knowledge of his driving record was imputed to All Day Leasing, we must conclude, nevertheless, that All Day Leasing did not furnish the Cadillac automobile to Keenan negligently. Why? Because All Day Leasing leased the automobile previously to United Trucking. Thus, it was the responsibility of United Trucking to be sure that a driver of the automobile was competent.

Plaintiff contends the evidence was sufficient to enable the jury to disregard the corporate shields surrounding All Day Leasing and United Trucking and to conclude that the lease was a sham. We disagree. The only evidence in this regard demonstrated that the officers and shareholders of All Day Leasing and United Trucking were the same. Such evidence alone was not sufficient to enable the jury to disregard the separateness of the two corporations. See *Sturdivant v. Chapman*, 146 Ga. App. 26, 28 (2) (245 SE2d 311); *Bowen & Bowen v. McCoy-Gibbons*, 185 Ga. App. 298, 303 (2) (363 SE2d 827).

It cannot be said that All Day Leasing negligently entrusted the Cadillac automobile to Keenan. It follows that the trial court erred in failing to grant All Day Leasing's motion for a directed verdict on the negligent entrustment issue.

6. Defendants contend the trial court erred in instructing the jury that driving without a license constitutes negligence per se. While driving without a license is a violation of State law, it does not

constitute actionable negligence unless there is a causal connection between the violation and the injury. *Carpenter v. Lyons*, 78 Ga. App. 214, 217, 218 (50 SE2d 850). If this had been the only act which the trial court characterized as negligence per se, we would be inclined to find harmful error. However, the trial court also charged that other acts committed by defendant Keenan (exceeding the speed limit, driving too fast for conditions, failure to stop and remain at the scene of an accident, and failure to render assistance to a person injured) constituted violations of the law. Thus, the court's charge, viewed on the whole, falls within the ruling in *Johnston v. Woody*, 148 Ga. App. 152, 154 (2) (250 SE2d 873). We cannot see how defendants were harmed thereby. Defendants' eighth enumeration of error is without merit.

7. In their ninth enumeration of error, defendants contend the trial court erred in ruling that if defendants attempted to impeach plaintiff by using a statement made by plaintiff during the criminal trial of Keenan, then plaintiff would be entitled to introduce the *entire* transcript of the criminal trial. This enumeration of error lacks merit. The trial court made no such ruling. Rather, it ruled that if defendants attempted to impeach plaintiff with a statement made at Keenan's criminal trial, the source of plaintiff's previous statement could be identified.

8. Finally, defendants assert the trial court erred in failing to reduce the amount of the judgment by the amount plaintiff was paid ($5,000) pursuant to his minimum no-fault coverage. We agree. Plaintiff was not entitled to recover the amount of his economic loss benefits ($5,000) as a matter of law. *McGlohon v. Ogden*, 251 Ga. 625, 628 (308 SE2d 541); *Glover v. Grogan*, 162 Ga. App. 768, 771 (5) (292 SE2d 465). The trial court should have reduced the amount of the judgment accordingly. Consequently, it is directed that a final judgment in favor of plaintiff be entered which reflects a write-off from the jury verdict in the amount of $5,000.

*Judgment affirmed in part with direction and reversed in part. Pope and Benham, JJ., concur.*

DECIDED JANUARY 19, 1989 —
REHEARING DENIED JANUARY 31, 1989 —

J. Wayne Moulton, C. Michael Walker, for appellants.
R. Chris Irwin & Associates, Bryan F. Dorsey, Jamie L. Mack, for appellees.