**THIRD DIVISION**
**DOYLE, P. J.,**
**MARKLE and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**September 26, 2025**

# In the Court of Appeals of Georgia

A25A1005. BLAZYS et al v. MCKNIGHT.

PADGETT, Judge.

In this auto accident case, plaintiffs Joseph and Romaine Blazys submitted offers of settlement to Allstate Insurance Company, their uninsured/underinsured motorist carrier, pursuant to OCGA § 9-11-68. In January 2023, after the jury verdict exceeded the threshold for fees to be awarded pursuant to the statute, plaintiffs filed a motion seeking attorney fees and expenses of litigation under OCGA § 9-11-68 (d). The trial court denied the motion, reasoning, in part, that Allstate was not a "party" subject to OCGA § 9-11-68 once it elected to abandon its status as a named party and to proceed in the uninsured tortfeasor's name only. For the following reasons, we agree and affirm.

The record shows that on April 21, 2017, Joseph Blazys and his now-deceased wife, Romaine Blazys, were hit head-on and suffered serious injuries when Terrence McKnight drove his car into the rear of another vehicle, propelling it into their lane. Believing that McKnight was uninsured, plaintiffs served a copy of the complaint and summons on their uninsured/underinsured ("UM") motorist insurance carrier,[1] Allstate, in April 2019. Allstate answered the complaint in its own name and filed a cross-claim against McKnight. McKnight also filed an answer. UM carrier Zurich American Insurance Company was also served with the summons and complaint and filed an answer.[2] Discovery ensued.

On November 18, 2020, plaintiffs each served Allstate with an offer of settlement pursuant to OCGA § 9-11-68. The offers sought to resolve "all claims [each plaintiff had] against Allstate Fire and Casualty Insurance Company and Defendant arising out of a motor vehicle collision," for the policy limits of $250,000 per plaintiff. Allstate did not respond to either offer.

---

[1] Georgia law requires all automobile insurers operated in Georgia to offer uninsured motorist coverage to policyholders in the same amount as the liability coverage purchased. See OCGA § 33-7-11 (a).

[2] Zurich is not a party to this appeal.

The case went to trial in December 2022. Before trial, Allstate made the election to proceed at trial solely in the name of defendant McKnight. See OCGA § 33-7-11 (d) (providing that an uninsured motorist carrier served with an action by its insured "shall have the right to file pleadings and take other action allowable by law in the name of either the known owner or operator [of the uninsured vehicle] or both or itself"). Plaintiffs did not object. At trial, McKnight was represented by counsel provided by Allstate (as well as Zurich). The jury issued a verdict in favor of plaintiffs, awarding damages in the amount of $1,192,546.39 to plaintiff Joseph Blazys and $361,440.88 to plaintiff Romaine Blazys. In February 2024, plaintiffs filed a satisfaction of judgment as to Zurich.

Following the entry of judgment, plaintiffs filed a motion for attorney fees and expenses, noting that they each had served offers of settlement complying with OCGA § 9-11-68; that Allstate had failed to respond and thereby rejected its offers; and that both plaintiffs had recovered a final judgment in an amount greater than 125% of each plaintiff's offer, thereby entitling them to the recovery of attorney fees and expenses under OCGA § 9-11-68 (b) (2). Allstate opposed the motion, contending that OCGA § 9-11-68 does not apply to uninsured motorist claims; that plaintiffs had not proven

that they had been awarded more than 125% of their settlement offers against Allstate; and that the amount of fees requested was not reasonable.

The trial court denied the motion for fees, concluding that OCGA § 9-11-68 did not apply to plaintiffs' claims. In its order, the trial court rejected Allstate's argument that the claims against Allstate were not "tort claims" covered by OCGA § 9-11-68. However, the trial court concluded that OCGA § 9-11-68 was inapplicable because Allstate was not a "party" against whom fees could be awarded under OCGA § 9-11-68 and the uninsured motorist statute, OCGA § 33-7-11, provides the exclusive remedy for a UM carrier's failure to agree to a demand to pay a covered loss. See OCGA § 33-7-11 (j). In light of these conclusions, the trial court declined to consider the reasonableness of the fee amount. Plaintiffs appeal from this order.[3]

1. On appeal, plaintiffs argue that the trial court erred by concluding that Allstate was not a "party" to which OCGA § 9-11-68 could be applied. The trial

_____

[3] Plaintiffs' initial appeal from this order was docketed in December 2023, and this Court remanded the case to the trial court with directions to vacate its order as to Romaine Blazys because she had passed away prior to the entry of the trial court's order, thus rendering it a nullity, and to complete a substitution of parties before filing a second appeal. On remand, Joseph Blazys, in his capacity as executor, was substituted for Romaine and the trial court entered its December 19, 2024 order denying the motion for attorney fees as to the estate. Plaintiffs then filed a timely notice of appeal from that order.

court's order determined that Allstate "undertook the role of a party when it answered in its own name, but that status changed when Allstate elected to proceed in [McKnight's] name," at which point "it ceased to be a party." For the following reasons, we agree and affirm.

In interpreting OCGA § 9-11-68 and OCGA § 33-7-11, "we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would." *Junior v. Graham*, 313 Ga. 420, 423 (2) (a) (870 SE2d 378) (2022) (citation and punctuation omitted). When the statutory text is clear and unambiguous, the plain meaning of the text governs and the "search for statutory meaning is at an end." *Deal v. Coleman*, 294 Ga. 170, 173 (1) (a) (751 SE2d 337) (2013). When the plain meaning is not as clear, however, the court must "look to the text of the provision in question and its context within the larger legal framework, to discern the intent of the legislature in enacting it." *Scott v. State*, 299 Ga. 568, 571 (2) (788 SE2d 468) (2016). Accord *City of Marietta v. Summerour*, 302 Ga. 645, 656 (3) (807 SE2d 324) (2017). We note that, as a "statutory authorization for attorney fees," OCGA § 9-11-68 "must be strictly

construed." *Ellis v. Seaver*, 367 Ga. App. 322, 322 (885 SE2d 817) (2023). The interpretation of a statute is a question of law, which is reviewed de novo on appeal. See *State v. Coleman*, 306 Ga. 529, 530 (832 SE2d 389 ) (2019). With these principles in mind, we turn to the statutory provisions at issue.

(a) *The Offer of Settlement Statute, OCGA § 9-11-68*

OCGA § 9-11-68 was added to Georgia's Civil Practice Act as part of the 2005 Georgia Tort Reform Act in an effort to encourage pre-trial settlement of tort claims by incentivizing the making and accepting of reasonable settlement offers. See Ga. L. 2005, Act 1, § 5 (original enactment of OCGA § 9-11-68); Ga. L. 2006, Act 589, § 1 (re-enactment in its current form); *Junior*, 313 Ga. at 423-424 (2).

Subsection (a) of OCGA § 9-11-68 provides that "either party" to a suit may serve upon the "other party" a written offer to settle a tort claim for a specific amount.[4] Offers governed by this statute must contain certain elements, be made at

---

[4] See OCGA § 9-11-68 (a) ("[a]t any time more than 30 days after the service of a summons and complaint on a party but not less than 30 days (or 20 days if it is a counteroffer) before trial, *either party* may serve upon *the other party*, but shall not file with the court, a written offer . . . to settle a tort claim for the money specified in the offer and to enter into an agreement dismissing the claim or allow judgment to be entered accordingly. . .") (emphasis supplied").

least 30 days after the service of the summons and complaint, but not later than 30 days before trial, and be held open for 30 days. OCGA § 9-11-68 (a), (c).

Subsection (b) of OCGA § 9-11-68 provides that when a party makes an offer that complies with these statutory requirements and that offer is rejected (either expressly or by the offeree's failure to respond within 30 days), the offeror becomes eligible for an award of attorney fees and litigation expenses if that party ultimately prevails in the litigation. OCGA § 9-11-68 (b), (c). Relevant to this appeal, OCGA § 9-11-68 (b) (2) provides that

> [i]f a *plaintiff* makes an offer of settlement which is rejected by the *defendant* and the *plaintiff* recovers a final judgment in an amount greater than 125 percent of such offer of settlement, the *plaintiff* shall be entitled to recover reasonable attorney's fees and expenses of litigation incurred by the plaintiff or on the plaintiff's behalf from the date of rejection of the offer of settlement through the entry of judgment.

(emphasis supplied).[5]

---

[5] OCGA § 9-11-68 (b) (1), which is not at issue in this case, provides a remedy in cases where the defendant makes an offer of settlement that is rejected by the *plaintiff*. Under this provision, "if the final judgment is one of no liability or the final judgment obtained by the plaintiff is less than 75 percent of such offer of settlement[,]" the defendant is entitled to an award of "reasonable attorney's fees and expenses of litigation incurred by the defendant or on the defendant's behalf from the date of the rejection of the offer of settlement through the entry of judgment." OCGA

7

Once these statutory requirements have been met, an award of fees and expenses is mandatory.[6] See OCGA § 9-11-68 (d) (1) (providing that trial court "shall" award fees and expenses if requirements of subsection (b) (1) or (b) (2) are met). Thus, the statute does not condition a fee award on any showing of bad faith or misconduct by the party rejecting the offer. Rather, it is the mere rejection of a reasonable offer—as shown by comparison with the eventual judgment—that triggers liability for the fee award. See *Junior*, 313 Ga. at 420 (noting that OCGA § 9-11-68 (b) "provides a *sanction* in the form of attorney fees and litigation expenses incurred after the failure to accept what the statute defines as a reasonable settlement offer") (emphasis supplied)).

(b) *The Uninsured Motorist Statute, OCGA § 33-7-11*

The uninsured motorist statute was enacted by the General Assembly in 1963 with the intent to protect insured motorists from the negligence of the uninsured and it required auto insurers to provide their insured with a baseline amount of coverage

---

§ 9-11-68 (b) (1).

[6] But see OCGA § 9-11-68 (d) (2) (the trial court does have discretion to "disallow" an award if it makes a specific written finding that the offer was "not made in good faith").

for accidents caused by uninsured motorists. See OCGA § 33-7-11 (a) (requiring auto insurance policies to provide minimum levels of UM coverage); *Dacosta v. Allstate Ins. Co.*, 188 Ga. App. 10, 11 (372 SE2d 7) (1988) ("[i]t has been held that the [l]egislature's purpose in enacting the Georgia uninsured motorist statute was 'to protect the insured as to his actual loss.'") (citation omitted). The statute is designed to "place the injured insured in the same position as if the offending uninsured motorist were covered with liability insurance." *Curry v. Allstate Prop. & Cas. Ins. Co.*, 363 Ga. App. 409, 411 (1) (870 SE2d 808) (2022) (citation and punctuation omitted). See also *Appling v. State Farm Fire & Cas. Ins. Co.*, 348 Ga. App. 369, 372 (1) (823 SE2d 61) (2019) (the "Georgia uninsured motorist statute is designed to protect the insured as to his actual loss, within the limits of the policy or policies of which he is a beneficiary") (citation and punctuation omitted).

In addition to requiring UM coverage as part of standard auto policies, the statute prescribes rules under which insureds are to assert claims arising from accidents involving an uninsured motor vehicle[7] and provides for subrogation when

---

[7] "Uninsured motor vehicle" is defined as, in relevant part, a motor vehicle as to which there is "[n]o bodily injury liability insurance and property damage liability insurance." OCGA § 33-7-11 (b) (1) (D) (i).

UM carriers have paid such claims. See OCGA § 33-7-11 (d), (e), (f). When an insured files suit against the owner or operator of an uninsured motor vehicle, the statute requires the insured to serve a "copy of the action and all pleadings" upon "the insurance company issuing the [uninsured motorist] policy as though the insurance company were actually named as a party defendant." OCGA § 33-7-11 (d). The UM carrier then has the right to conduct discovery and to "file pleadings and take other action allowable by law *in the name of either the known owner or operator or both or itself.*" OCGA § 33-7-11 (d) (emphasis supplied).

In addition, the statute also provides that a UM carrier may be liable for damages arising from a bad faith failure to settle. It notes that "[i]f the insurer shall refuse to pay any insured any loss covered by this Code section within 60 days after a demand has been made by the insured" and the refusal was made in "bad faith," then the "insurer shall be liable to the insured in addition to any recovery under this Code section for not more than 25 percent of the recovery or $25,000 whichever is greater and all reasonable attorney's fees for the prosecution of the case under this Code section." OCGA § 9-11-33 (j).

(c) Allstate argued below — and the trial court agreed— that Allstate was not a "party" to which OCGA § 9-11-68 could be applied. The trial court held that Allstate "undertook the role of a party when it answered in its own name, but that status changed when Allstate elected to proceed in Defendant [McKnight's] name," at which point "it ceased to be a party." Plaintiffs argue, in contrast, that Allstate was a party "[a]t all times relevant to the OCGA § 9-11-68 offer" because it was a party at the time the offer of settlement was both made and rejected.

Construing OCGA § 9-11-68 strictly, as we must, *Ellis*, 367 Ga. App. at 322, we conclude that the statute contemplates that an award of attorney fees and expenses of litigation would apply only to named parties that participated in the decision to reject an offer of settlement *and* then proceeded to trial. OCGA § 9-11-68 (a) provides that "either party" may serve a written offer to settle upon the opposing party. As pertinent to this appeal, OCGA § 9-11-68 (b) (2) provides that if "a *plaintiff* makes an offer of settlement which is rejected by the *defendant* and the *plaintiff* recovers a final judgment in an amount greater than 125 percent of such offer of settlement, the *plaintiff* shall be entitled to recover attorney's fees and expenses incurred . . . from the date of the rejection of the offer of settlement *through the entry of judgment*." (emphasis

supplied). OCGA § 9-11-68 (d) (1) then refers back to subsection (b) by providing that the trial court "*shall* order the payment of attorney's fees and expenses" upon proof that the provisions of subsection (b) (1) or (b) (2) have been met. (Emphasis supplied.) Finally, OCGA § 9-11-68 (e) refers to the prevailing and opposing parties "at the time the verdict or judgment is rendered." Indeed, OCGA § 9-11-68 refers exclusively to named parties and uses the words "party," "parties," "plaintiff" or "defendant" no fewer than 25 times. See OCGA § 9-11-68 (a), (a) (2), (b) (1)-(2), (d) (2), (e) and (e) (3). The most natural and reasonable reading of subsection (b) (2) is that the "final judgment" necessary to trigger a fee award must be against the *same* defendant who rejected the settlement offer.[8] Further, the statute does not refer to non-parties, former parties, or a purported "real party in interest" that is not the named plaintiff or defendant. "There is no reason to think that 'party'" as that term is used in OCGA § 9-11-68, "means anything other than a named party to the litigation." *Reeves v. Upson Regional Med. Ctr.,* 315 Ga. App. 582, 586-587 (2) (726 SE2d 544) (2012) (concluding that according to the plain language of OCGA § 9-15-14, an award of

---

[8] If we were to hold otherwise, even an offeree that goes to trial and wins a defense verdict could still suffer a penalty under OCGA § 9-11-68 if *another* defendant is found liable for an amount greater than 125% of the offer.

attorney fees and expenses under OCGA § 9-15-14 (b) cannot be awarded to a nonparty). See also, e. g., *Ellis*, 367 Ga. App. at 323("If the provisions of OCGA § 9-15-14 are to be extended to non-parties, the legislature must do it, not this court.").

We next examine whether Allstate was a named party to whom OCGA § 9-11-68 applies. As noted above, the uninsured motorist statute provides that once a UM carrier has been served, it has the option to participate in the litigation in several different ways.[9] OCGA § 33-7-11 (d) allows the UM carrier to elect to "file pleadings and take other action allowable by law" in its own name, in the name of the uninsured motorist, or in the name of John Doe. *Moss v. Cincinnati Ins. Co.*, 154 Ga. App. 165, 167 (268 SE2d 676) (1980) (superseded by statute on other grounds as recognized by *Barker v. Muschett*, 375 Ga. App. 585, 586 (2) (916 SE2d 796) (2025)). Accord *Singleton v. Phillips*, 229 Ga. App. 286, 288-289 (2) (494 SE2d 66) (1997).

If a UM carrier elects to proceed *only* in the name of the alleged tortfeasor, it can obtain an "adjudication of tort liability without the potentially prejudicial injection into the case of the presence of insurance coverage," *Singleton*, 229 Ga. App. at 288

---

[9] See *Hulsey v. Standard Guar. Ins. Co.*, 195 Ga. App. 803, 804 (395 SE2d 282) (1990) ("The option of becoming a party is . . . left to the [UM] carrier. It is 'permitted' to become a party; it has the 'option' and 'may elect' to do so").

(2) (citation and punctuation omitted), and the insured may not obtain a judgment against the insurer in the tort action. *Smith v. Phillips*, 172 Ga. App. 459, 464 (2) (323 SE2d 669) (1984). Conversely, if a UM carrier answers in its own name, it has the right to contest both the liability of the alleged tortfeasor and any liability under the policy. *Moss*, 154 Ga. App. at 170. Accord *Brown v. State Farm Mut. Auto. Ins. Co.*, 242 Ga. App. 313, 315 (2) (529 SE2d 439) (2000). Further, as an entity with the status of a named party, the UM insurer is bound by the Civil Practice Act. *Kelly v. Harris*, 329 Ga. App. 752, 755 (1) (766 SE2d 146) (2014).

However, OCGA § 9-11-33 does not require UM carriers to take on the status of a party in every case in which they are served. *Hulsey v. Standard Guar. Ins. Co.*, 195 Ga. App. 803, 804 (395 SE2d 282) (1990). Indeed, the UM carrier "may also choose not to file *any* pleadings." *Singleton,* 229 Ga. App. at 288 (2). If the UM carrier elects not to join the tort action as a party, "it may then litigate its contract disputes separately in any 'action allowable by law.'" *Kelly*, 329 Ga. App. at 755 (1) (punctuation and footnote omitted).

Further, Georgia law is clear that once a UM carrier has joined the litigation in its own name, it retains the option to later elect to abandon that status. This Court has

held that "nothing in [OCGA § 33-7-11] prevents the insurer from changing its position during the course of litigation." *Singleton* 229 Ga. App. at 288 (2). In *Singleton*, supra, the UM carrier answered the tort suit in its own name and became a party to the case. After participating in discovery for several months, the UM carrier withdrew its answer. Id. at 288 (2). The trial court granted plaintiffs' motion to force the UM carrier into the status of a party defendant. Id. at 288. This Court held that the trial court committed reversible error when it held that once a UM carrier made its election to participate as a party, it was required to remain as a named party through the trial of the case. Id. This Court then held that there is no reason to require a UM carrier "to continue to proceed in its own name simply because it elected to do so initially." Id. at 288-289 (2).[10]

In this case, Allstate initially proceeded in the litigation in its own name by filing an answer and cross-claim against defendant McKnight and by participating in

---

[10] See also *Hossain v. Nelson*, 234 Ga. App. 792, 793 (1) (507 SE2d 243) (1998) (nothing in OCGA § 33-7-11 (d) "prevents the insurer from changing its position during the course of litigation") (citation and punctuation omitted); *Keenan v. Hill*, 190 Ga. App. 108, 109 (1) (378 SE2d 344) (1989) (an uninsured motorist insurer was not required to continue to proceed in its own name after it reached settlement with motorist simply because it elected to do so initially).

15

discovery as allowed by OCGA § 33-7-11 (d). Allstate also participated in the litigation as a named party at the time that plaintiffs made their offer of settlement. However, as shown by the pre-trial order, Allstate elected to abandon this status prior to trial and to proceed at trial in defendant McKnight's name only. It had the right to do so. See *Singleton*, 229 Ga. App. at 888-889 (2); *Keenan*, 190 Ga. App. at 108 (1) ("We see no reason . . . to require an uninsured motorist carrier to continue to proceed in its own name simply because it elected to do so initially"). Thus, Allstate was not a named party or a defendant at the time of trial. Indeed, the verdict returned by the jury was against defendant McKnight only. See *Bohannon v. Futrell*, 189 Ga. App. 340, 342 (1) (375 SE2d 637) (1998) ("No judgment can be entered against the [UM carrier] in a tort action in which the [UM carrier] has . . . not chosen to participate directly"). Accordingly, the trial court correctly held that an award of attorney fees and expenses pursuant to OCGA § 9-11-68 was not warranted.

(d) In cases such as this one, where the UM carrier elected to abandon its status as a named party prior to trial, plaintiffs can seek attorney fees against the UM carrier pursuant to OCGA § 33-7-11 (j). As stated above, subsection (j) provides that if an insurer fails to pay a UM coverage demand within 60 days, and such failure is found

16

to be in bad faith, "the insurer shall be liable to the insured in addition to any recovery under this Code section for not more than 25 percent of the recovery or $25,000.00, whichever is greater, and all reasonable attorney's fees for the prosecution of the case under this Code section." OCGA § 33-7-11 (j). See also *Curry*, 363 Ga. App. at 411 (1); *McCall v. Allstate Ins. Co.*, 251 Ga. 869, 871 (2) (310 SE2d 513) (1984). While plaintiffs argue that our holding creates an outcome where UM carriers — unlike other tort defendants — can avoid liability for OCGA § 9-11-68 fees for an unreasonable failure to settle, this argument cannot override the plain language of either OCGA § 9-11-68 or OCGA § 33-7-11. See e. g., *Alston & Bird, LLP v. Hatcher*, 312 Ga. 350, 350 (862 SE2d 295) (2021) ("when we interpret unambiguous statutory text that appears not to serve the purpose we imagine the statute to have, we must follow the path of the text, not the apparently different path of the 'purpose'"), superseded by statute on other grounds as recognized by *Deaton Holdings, Inc. v. Reid*, 367 Ga. App. 746, 748 n.3 (888 SE2d 333) (2023).

2. As a result of our holding in Division 1, we need not address plaintiffs' remaining enumerations of error.

*Judgment affirmed. Doyle, P. J., and Markle, J., concur.*

17